**188**

Leo R. Tresp, of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, for appellee.

LOONEY, Justice.

Kaufman County Levee Improvement District No. 10, the appellant herein, organized under the Canales Act, passed by the 35th Legislature, Vernon's Ann.Civ.St. arts. 8176, 8194 to 8197, as authorized by § 59 of Article 16 of the Constitution, Vernon's Ann.St., brought this action against National Life Insurance Company, the appellee, for delinquent taxes, and to foreclose its tax lien upon land situated within the District. Appellee filed a plea in abatement, based on several grounds; among others, (1) because the persons acting as supervisors of the District were not named in the petition; and (2) because the three supervisors of the District were disqualified, in that, they were nonresidents of the District, hence had no authority to represent it or authorize the institution of the suit. In answer to the plea in abatement, appellant alleged that Byron Alstot, W. E. Burgess and H. A. McCormick were the duly qualified and acting supervisors of the District, under regular appointment by the Commissioners' Court of Kaufman County. At the hearing, it was not denied, but admitted, that these supervisors were nonresidents of the District and were at the time of their appointment. It was also

**KAUFMAN COUNTY LEVEE IMP. DIST. NO. 10 v. NATIONAL LIFE INS. CO.**

**No. 13411.**

Court of Civil Appeals of Texas. Dallas.

March 26, 1943.

Rehearing Denied April 23, 1943.

shown that Mr. Leo R. Tresp, attorney for appellant, was regularly employed by the supervisors and directed to bring the instant suit. Appellee's plea in abatement was sustained on the grounds just mentioned and the suit was dismissed, from which, this appeal was prosecuted.

■ Appellant assigns error on the action of the court in dismissing the suit for the reasons stated. We think the suit was properly brought, notwithstanding the names of the supervisors were not mentioned in the petition. Under Arts. 8016 and 8017 R.C.S., the institution and prosecution of the suit in the name of the District was authorized. However, in its supplemental pleading, appellant having alleged the names of the supervisors, and it being admitted that they were nonresidents of the District, appellee concedes that the first ground set up in the plea in abatement is important only when considered in connection with the second ground. The second and main contention of appellee, in the court below and here, is that the three persons acting as supervisors, who employed the attorney and caused the suit to be instituted, being nonresidents of the District, in law were not supervisors and had no authority to represent the District. This proposition is based upon the contention that the question under consideration is controlled by the provisions of § 14 of Art. 16 of the Constitution, which provides that: "All civil officers shall reside within the State; and all district or county officers within their districts or counties, and shall keep their offices at such places as may be required by law; and failure to comply with this condition shall vacate the office so held." This Constitutional provision made its appearance first in the Constitution of 1845 as § 9, Art. 7, reading identically as it reads in the present Constitution, except the language "and failure to comply with this condition shall vacate the office so held", was added when the present Constitution was adopted. The language, as it first appeared in 1845, also constituted § 9 of Art. 7 of the Constitution of 1861; also as § 9, Art. 7 of the Constitution of 1866; also as § 12, Art. 12, of the Constitution of 1869. So, it seems that the section, except the penal provision added in 1876, has persisted in the identical language as first introduced in 1845.

■ The question presented is: Does this provision apply to improvement districts, such as appellant, created under recent amendments to the Constitution? We do not think so. The provision has the same meaning today that it had when first adopted as a part of the Constitution of 1845; the language added in 1876, the penal provision, did not alter its meaning. A fundamental rule is that constitutions should receive a consistent and uniform interpretation, so that they shall not be taken to mean one thing at one time and another thing at another time. 6 R.C.L., p. 46, § 39. Constitutions do not change with the varying tides of human affairs, but the will of the people as expressed therein remains inflexible until repealed or changed by amendment. 11 Am.Jur., p. 659, § 50.

Improvement districts, such as the District involved here, were unknown in 1845 when § 14 of Art. 16 became a part of the constitutional law of the state; nor did such districts come into existence until after the constitutional amendment known as § 52 of Art. 3 was adopted in November, 1904, and more extensively after the amendment known as § 59 of Art. 16 was adopted in August, 1917, hence we do not think § 14 of Art. 16 has any application whatever to the District involved here.

■ Although we have no precedent from the courts, yet in quite a number of Acts, creating improvement districts under § 59 of Art. 16, the Legislature proceeded in utter disregard of § 14 of Art. 16, in prescribing the place of residence of members of the governing bodies of such districts; in other words, the Legislature has consistently acted as though § 14 of Art. 16 had no application to the subject. In creating the Brazos River Conservation and Reclamation District in 1929, the 41st Legislature, Loc. & Sp. Laws, 2d Called Sess., c. 13,[1] provided for a board of 21 directors, but made no provision as to the residence of the directors; in creating the Central Colorado River Authority, in 1935, the 44th Legislature, c. 338, provided that the members of the governing board should be residents and freehold property taxpayers of the state and residents of the district. A similar provision was made when the Comal County Recreational District was created by the 35th Legislature in 1937 c. 57; but in creating the Guadalupe-Blanco River Authority in 1933, the 43rd

[1] For acts concerning Water Supply and Control, see Vernon's Ann.Civ.St. following article 8197f.

Legislature, 1st called Sess. c. 75, provided for a board of nine directors, prescribing simply that they should be resident, freehold property taxpayers in the State of Texas. With reference to the Gulf Water Supply District, created by the 44th Legislature in 1935, c. 361, no provision with reference to the residence of the members of the board was made, other than that they should be freehold property taxpayers in the State of Texas. The 44th Legislature, 1st Called Sess. c. 414, provided that the Leon River Flood Control District, created in 1935 (composed of Eastland and Callahan Counties), should have a board of nine members, but provided that only five members should reside within the district. The 43rd Legislature, 4th Called Sess. c. 7, provided that the Lower Colorado River Authority, composed of ten counties, should have a board of nine members, but contained no provision requiring them to reside within the District. The 43rd Legislature, 1st Called Sess., c. 63, creating the Lower Neches Valley Authority, provided for a board of seven members, all of whom should be freehold property taxpayers and legal voters of the district, and a similar provision was made in 1935 by the 44th Legislature, c. 319, creating the lower Rio Grande Flood Control District; but in creating the Upper Colorado River Control, composed of the Counties of Coke and Tom Green, the 44th Legislature c. 126, provided for a board of nine members, three of whom should be resident citizens of Tom Green County, three resident citizens of Coke, and the remaining three, resident citizens of counties contiguous to the District, or of any county, part of which may be within 25 miles of the district. Thus it seems that the Legislature, in prescribing the residences of members of the governing bodies of these improvement districts, acted without reference to the provisions of § 14 of Art. 16. While not binding upon the courts, the consistent unchallenged legislative and departmental construction of the Constitution, extending over a period of years, should be followed by the courts, unless manifestly wrong. American Indemnity Co. v. City of Austin, 112 Tex. 239, 248, 246 S.W. 1019; Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, and authorities cited; Cox v. Robison, 105 Tex. 426, 439, 150 S.W. 1149.

We do not think it unreasonable to assume that each improvement district created by the Legislature under § 59 of Art. 16, issued bonds that were approved by the Attorney General's Department before being marketed. To sustain the contention of appellee and hold that § 14 of Art. 16 prescribed the place of residence of members of the governing bodies of these districts, and that failure to comply vacated the office, would disturb the public credit, imperil the validity of outstanding bonds, and bring utter confusion to the fiscal affairs of many districts; and again, the Commissioners' Court of Kaufman County would be confronted with the anomalous situation of having to select supervisors for the District from a few negroes, not tenants, but laborers, the only persons residing in the District.

In view of what has just been said, we do not deem it appropriate to pass upon the other questions presented by appellant. For reasons stated, we think the court erred in sustaining the plea in abatement and in dismissing the suit, therefore, its judgment is reversed and judgment here rendered, overruling the plea in abatement, and remanding the cause for further proceedings.

Reversed and remanded.

