W. W. MOORE et al., Appellants,

v.

EDNA HOSPITAL DISTRICT et al.,
Appellees.

No. 465.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 31, 1969.

Rehearing Denied Jan. 22, 1970.

**510**

Vickery & McConnell, Charles R. Vickery, Jr., Houston, William H. Hamblen, Edna, for appellants.

Vinson, Elkins, Weems & Searls, John L. Murchison, Jr., Houston, Thomas R. Bell, Office of Atty. Gen., John W. Fainter, Jr., Asst. Atty. Gen., Austin, Anderson, Smith & Null, M. L. Null, Victoria, for appellees.

## OPINION

SHARPE, Justice.

This case involves a suit for declaratory judgment, for injunctive relief and an alleged election contest. The occurrence made the basis of the case was the creation of the Edna Hospital District by confirmation election on November 11, 1967, in accordance with House Bill 610 as passed by the 60th Legislature of Texas, Regular Session, 1967, effective May 12, 1967, sometimes hereinafter referred to as the Enabling Act. Appellants who are land owners and taxpayers within the Hospital

District filed suit in the District Court of Jackson County against the Hospital District and its board of directors, Jackson County and its county judge and other members of the Commissioners' Court, seeking a declaration that the Hospital District was invalid either because its Enabling Act was unconstitutional or because it was not lawfully created. Appellants' petition included alternative pleadings requesting declarations that Jackson County could not tax for hospital purposes and that it be enjoined from doing so if the Hospital District was valid.

The trial court sustained District's plea to the jurisdiction in connection with an alleged election contest and ruled that it would take no further cognizance of the grounds contained in appellants' pleadings which could be asserted and raised in a statutory election contest; and as to such matters appellants' pleadings were dismissed.

The trial court also granted District's motion for summary judgment, which in effect upheld the validity of the District. Interlocutory orders were entered (and later carried forward into the final judgment) which disposed of the controversies between appellants and District. Thereafter, the controversy between appellants and County was tried before the judge and an empaneled jury. When the evidence was closed the trial court withdrew the case from the jury and held in favor of County on the question of its right to levy and collect ad valorem taxes on all property in Jackson County for the purpose of maintaining and supporting the County Hospital located at Ganado, Texas, outside the boundaries of the Edna Hospital District.

The final judgment entered by the trial court, which denied the relief sought by appellants, contained the following recitations:

"It is further ORDERED, ADJUDGED and DECREED by the Court that a de-claratory judgment should be rendered as follows:

(1) Jackson County has the right to assess and collect ad valorem taxes on all property in Jackson County for the purpose of maintaining and supporting the County Hospital located at Ganado, Texas.

(2) The Edna Hospital District has been lawfully created and has a lawful existence.

(3) The Enabling Act for the Edna Hospital District is valid and constitutional.

(4) The Edna Hospital District has authority to levy taxes and to issue bonds for hospital purposes and medical care within the boundaries of the District."

We agree with the trial court's holdings hereinabove set out for the reasons hereinafter to be stated and affirm the judgment.

Appellants assert ten points of error. We will consider the contentions made thereunder in three groups as follows: Group One, involving appellants' contentions that the District Enabling Act is an unconstitutional local and special law prohibited by Art. III, Section 56 of the Texas Constitution, Vernon's Ann.St.; that the notice to apply for the enabling law required by Art. III, Sec. 57 of the Texas Constitution was insufficient; that the title of the Enabling Act is insufficient; and that the Enabling Act conflicts with the Texas Constitution's "outstanding indebtedness" assumption requirement. Group Two, involving appellants' contentions concerning an alleged election contest; and particularly that appellants duly complied with the notice requirements of the Texas Election Code, Art. 9.03, V.A.T.S. Group Three, involving appellants' contentions that the judgment unlawfully subjects appellants' land to double taxation for hospitals by the County and District; and that the Enabling Act conflicts with the constitutional prohibition of double taxation.

*Appellants' Group One Contentions*

The background facts may be summarized as follows: On November 11, 1967 the qualified voters of the District voted 655 to 332 for the creation of the Edna Hospital District and for approval of bonds for the building and operation of the hospital. Theretofore, special notice had been given to the residents of the proposed district (on December 29, 1966 and January 5, 12 and 19, 1967) that the Legislature was considering a Bill for the creation of the Edna Hospital District. On May 12, 1967, pursuant to Art. IX, Sec. 9 of the Texas Constitution, the Legislature enacted the Enabling Act here in question, the same being a prerequisite to the creation of District. Texas Laws 1967, Chap. 172, p. 355; Art. 4494q, V.A.C.S: On November 13, 1967 the Commissioners Court of Jackson County, Texas convened in regular session and "approved as canvassed" the elections of November 11, 1967. The Commissioners Court ordered that the returns of the election be entered in the election return records of the County Clerk's Office. Thereafter, Mr. John W. Fainter, Jr., Head of the Municipal Bond and Charitable Trust Division for the Attorney General of Texas, requested preparation of a nunc pro tunc order canvassing the returns of the election for entry by the Commissioners Court of Jackson County, Texas. This order was duly entered on March 11, 1968, "Nunc Pro Tunc for the 13th day of November, 1967." Prior to the filing of appellants' suit the Attorney General of Texas had given preliminary approval to the bonds of District. Final approval was subject to receipt by the Attorney General of a non-litigation certificate and examination of bonds. After institution of the instant suit the Attorney General advised District that its bonds would not be approved until such time as a final judgment favorable to their issuance had been rendered. This action appears to be in accord with long standing policy of the Attorney General and does not reflect a view as to the merits of this suit. The preliminary approval of the bonds by the Attorney General did, however, reflect his views concerning the validity of the District in the absence of litigation.

█ We agree with District that appellants' Group One contentions are without merit. Appellants argue primarily that the Enabling Act creating the Edna Hospital District is the type of "local or special law" condemned by Art. III, Sec. 56, Texas Constitution. That provision prohibits certain types of local or special laws "except as otherwise provided in this Constitution." Appellee District takes the position that in any event the Enabling Act is expressly permitted by Art. IX, Sec. 9, Texas Constitution, which in part provides as follows:

> "The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts composed of one or more counties or all or any part of one or more counties * * *."

The question of whether an Enabling Act passed pursuant to Art. IX, Sec. 9, Texas Constitution is an unconstitutional "local or special law" has apparently not been heretofore considered by any Texas appellate court. However, in Sweeny Hospital District v. Carr, 378 S.W.2d 40 (Tex.Sup.1964) our Supreme Court examined certain phases of that provision. Although the question here presented was not before the Court in *Sweeny*, it is apparent that the court understood that the Enabling Acts passed pursuant to Art. IX, Sec. 9, Tex.Const., were local or special laws. The court there reviewed the history of a series of amendments to Art. IX of the Texas Constitution authorizing creation of hospital districts with power to levy taxes and issue bonds and in part held as follows:

> "Whereas all of the other hospital district amendments are local in scope, Sec. 9, Article 9 is general in scope. It empowers the Legislature to provide by law 'for the creation, establishment, maintenance and operation of hospital districts

composed of one or more counties or all or any part of one or more counties with power to issue bonds' for the purchase, construction, etc. of hospitals and with authority to levy annual taxes at a rate not to exceed 75¢ on the $100.00 valuation of property to meet the district's bond requirements, the indebtedness assumed by it, and maintenance and operating expenses. No authorizing election is required by the amendment for the issuance of bonds or the assumption of indebtedness, but it provides that 'such district shall not be created or such tax authorized unless approved by a majority of the *qualified property taxpaying electors* thereof voting at an election called for the purpose.' "

■ Art. IX, Sec. 9, Texas Constitution does not limit the Legislature to either general or special laws in the creation of hospital districts. In our opinion such districts may be created by either type of enactment. The nature of hospital districts to be created in limited areas, particularly where only a county or a portion of one county is involved, may be and usually is basically local in character. The operation of such hospital district may be confined to a fixed part of the State territory over which legislative jurisdiction is exercised.

Appellants rely in part on Smith v. Davis, 426 S.W.2d 827 (Tex.Sup.Ct., 1968). That case concerned a hospital district created under general law, and did not involve one created under Art. IX, Sec. 9, Tex.Const., which was later adopted. Smith v. Davis is not authority for the position here asserted by appellants.

The Legislature has enacted numerous enabling acts since the adoption of Art. IX, Sec. 9 in 1962, amending our Texas Constitution, and the Attorney General of Texas has, in accordance with regular procedure, approved the issuance of bonds for many of such districts which were created pursuant to local and special laws. We believe that the construction placed by the Legislature and the Attorney General on

Art. IX, Sec. 9 is correct and in accord with the intent reflected by such provision. We therefore hold that the Enabling Act creating the Edna Hospital District is not an unconstitutional local or special law condemned by Art. III, Sec. 56, Texas Constitution, particularly since it is expressly authorized by Art. IX, Sec. 9, Texas Constitution.

Appellants also argue that the notice to apply for the Enabling Act was insufficient to comply with Art. III, Sec. 57, Texas Constitution, which provides as follows:

"No local or special law shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill and in the manner to be provided by law. The evidence of such notice having been published, shall be exhibited to the Legislature, before such act shall be passed."

Art. IX, Sec. 9, Texas Constitution, also contains a notice provision reading as follows:

"Provided, however, that no district shall be created except by act of the Legislature and then only after thirty (30) days' public notice to the district affected, and in no event may the Legislature provide for a district to be created without the affirmative vote of a majority of the taxpaying voters in the district concerned."

■ Section 57 of Art. III is designed to cover notice concerning local and special laws not prohibited by Section 56, Art. III. The above-quoted provision of Section 9, Art. IX, applies specifically to notice concerning hospital districts. As a practical matter the notice given in this case prior to passage of the Enabling Act would satisfy the requirements of either Art. IX, Sec. 9 or Art. III, Sec. 57.

The holding of the court below with regard to notice is correct for several reasons. The notice was legally sufficient; passage of the Enabling Act, in itself, conclusively establishes that sufficient notice was given; and the Legislature has conclusively and finally determined that proper notice was given.

■ The parties stipulated that the pre-enabling act notice was given. Appellants argue, however, that the notice was insufficient and particularly point out that the published notice provided that:

"* * * said District to be composed of the area comprising County Voting Precincts Nos. 1, 2, 6 and 7 of Jackson County, Texas."

Appellants then argue that the Enabling Act, setting forth the metes and bounds description of the Edna Hospital District, did not include 1500 acres of Precinct No. 7 and that consequently the notice was fatally defective and insufficient. We disagree. Assuming that 1500 acres were included in the published notice not ultimately contained within the boundaries of the Edna Hospital District as established by the Enabling Act, that fact is immaterial and would not make the notice insufficient. The Enabling Act describes the Edna Hospital District as containing approximately 245,000 acres or 383 square miles. Thus, the 1500 acre variance claimed by appellants constituted only .0061 percent of the total area involved and is de minimis. Art. IX, Section 9 only requires "Notice to the district affected." The notice given satisfied that requirement. The requirement of Article III, Section 57 that the notice shall be published "in the locality where the matter or thing to be affected may be situated," was also satisfied. The inclusion in the notice of an insignificant percentage of land which was ultimately not contained within the boundaries of the district is not controlling. There is no showing that the voters were in any way misled and, on the other hand, it appears that they were fully notified and aware of the actual boundaries of the Edna Hospital District when they approved the creation of the district, particularly since the metes and bounds description in the Enabling Act was identical to the description in the notice calling the election. It further appears that the summary judgment evidence does not reflect that there was the claimed variance of 1500 acres. The only evidence of the number of acres involved in the alleged variance, if any, relied on by appellants is testimony given in the trial of August 13, 1968, (four days after the court had rendered summary judgment for the Edna Hospital District and its directors), when the trial court was hearing testimony with respect to issues as between appellants and County.

■ Appellants also attack the pre-enabling act notice because it stated that after the creation of the Edna Hospital District no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the boundaries of said district. This statement follows the language of Art. IX, Sec. 9 of the Constitution under which the Enabling Act was passed. The inclusion of this statement in the pre-enabling act notice cannot be considered misrepresentation or a defect in the notice. The fact that the judgment of the district court authorizes taxation by Jackson County within the boundaries of the Edna Hospital District does not relate to the adequacy of the pre-enabling act notice nor to the controversies between appellants and the Edna Hospital District.

■ The passage of the Enabling Act constituted a conclusive determination that due notice was given. Under the "enrolled-bill rule" legislative passage of an act provides a conclusive determination that the prerequisites to passage, constitutional or otherwise, have been accomplished. The rule is stated in 53 Tex.Jur. 2d, Statutes, § 85 at 128, as follows:

"In the review of enactments, the courts of Texas have long since adopted the

so-called 'enrolled bill rule', to the effect that a duly authenticated, approved, and enrolled statute imports absolute verity and is conclusive that the act was passed in every respect according to the constitutional requirement * * *."

Also, as stated by our Supreme Court:

"The rule has been long established * * * that a duly authenticated, approved, and enrolled statute imports absolute verity and is conclusive; that the act was passed in every respect as designated by the Constitution, * * * (Citing numerous decisions.)" Jackson v. Walker, 121 Tex. 303, 49 S.W.2d 693 (1932).

The applicability of the enrolled bill rule to the notice provisions of Article IX, Sec. 9 is demonstrated by the case of Moller v. City of Galveston, 23 Tex.Civ.App. 693, 57 S.W. 1116 (Galveston, 1900, writ denied), wherein the Court was concerned with the contention that a local or special law had been passed without the notice required by Art. III, Sec. 57, Texas Constitution. The Court of Civil Appeals held, alternatively, that "the passage of the act by the legislature is conclusive of the fact that due notice was given." The Court further said:

"* * * The constitution requires evidence of such publication to be exhibited to the legislature before such act shall be passed. This we think is for the purpose of authorizing that body to pass conclusively upon this question of fact. To hold otherwise would be relegate to the courts the ascertainment of a jurisdictional fact for the legislature, * * *." 57 S.W. at 1120.

■ Appellants rely upon Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467 (1936). There, the Commission of Appeals held alternatively that a statute was invalid because Article III, Sec. 57 notice had not been given. In reaching this conclusion the Court did not allude to the substantial body of law involving the enrolled

bill rule as exemplified by Moller. Additionally, Tynan is distinguishable from the instant case. There the parties stipulated that notice had not been given. Thus, the determination of the appellate courts that the bill was unconstitutional did not involve the question of what the Legislature had done. Tynan was concerned with a complete failure to give notice, while in the present case the only question is the sufficiency of the notice. Also, in Tynan the Legislature did not expressly declare that notice had been given. In the instant case the Legislature has expressly done so and that the notice was sufficient. The Enabling Act here involved provides in part:

"Proof of publication of the constitutional notice required in the enactment hereof under the provisions of Section 9, Article IX, Constitution of the State of Texas, has been made in the manner and form provided by law pertaining to the enactment of local and special laws and is hereby found and declared to be proper and sufficient to satisfy such requirement." Tex.Laws 1967, Ch. 172, § 18, at 361.

The question of fact as to constitutional notice and its sufficiency are jurisdictional fact questions which have been expressly determined by the Legislature. This was not the situation in Moller, where the court held that mere passage of the Act constituted a determination that notice had been given, or in Tynan where the parties had stipulated that notice had not been given. The finding of the Legislature here is entitled to the same weight as the determination of the city council in State of Texas ex rel. Rose v. City of LaPorte, 386 S.W. 2d 782 (Tex.Sup.1965), wherein the Court was concerned with the validity of an annexation ordinance enacted by the City of LaPorte. The City proceeded under statutes permitting annexation by cities having a population in excess of 5,000 inhabitants. The Supreme Court of Texas held that the question of the number of inhabitants of the City was one to be determined by the

governing body of the City of LaPorte and that its determination was conclusive in the absence of pleading and proof by the plaintiffs of fraud.

We overrule appellants' contention that the notice to apply for the Enabling Act was insufficient.

■ By their second point appellants contend that the Enabling Act is unconstitutional because Art. III, Sec. 35 of the Texas Constitution was not satisfied in that the title does not fairly express its subject. Art. III, Sec. 35, provides in part:

"No bill * * * shall contain more than one subject, which shall be expressed in its title."

The title of the Enabling Act concerning creation of the Edna Hospital District provides:

"An Act relating to the creation, administration, powers and duties, and financing of the Edna Hospital District of Jackson County; providing the Act shall expire on January 1, 1970, if said district has not been created pursuant to the provisions of the Act; and declaring an emergency."

Appellants argue that Art. III, Sec. 35 of the Texas Constitution was violated because the title to the Enabling Act does not mention that (1) the bill affected Jackson County's power to tax for its hospital; (2) affected the hospital authority of the City of Edna; (3) granted tax exemptions from city and county taxation for hospital purposes; and (4) conflicted with other statutes, e. g., Art. 4478 and Art. 1015(4).

Art. IX, Sec. 9 of the Texas Constitution provides in part:

"* * * that any district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants * * * (and) that after its creation no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the boundaries of the district; * * *."

Reference in the Enabling Act to the consequences mentioned by appellants is unnecessary. They occur, pursuant to Art. IX, Sec. 9, because of the creation of the hospital district (i. e., after the election) and regardless of whether they were mentioned in the Enabling Act. There is, therefore, no necessity for referring to them in an Enabling Act relating to the creation of a hospital district.

The applicability of Art. III, Sec. 35, to titles of legislative acts was considered by the Supreme Court of Texas in Lee v. State, 163 Tex. 89, 352 S.W.2d 724 (1962) wherein the Court said:

"It is well established that the caption of an act should be liberally construed so as to uphold its validity if at all possible. Gulf Insurance Co. v. James, 143 Tex. 424, 185 S.W.2d 966. It has also been said that, 'None of the provisions of a statute should be regarded as unconstitutional when they relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title.' Austin v. Gulf, Colorado & Santa Fe R. Co., 45 Tex. 234. So long as the caption states the main subject of an act, it will also be construed to cover any subsidiary matters if they are reasonably connected, germane, incidental, or relevant to the main subject."

See also Central Education Agency v. Independent Sch. Dist. of El Paso, 152 Tex. 56, 254 S.W.2d 357, 362 (1953).

The failure of the title to mention the fact that the Enabling Act prescribed duties for the Jackson County Tax Assessor and Collector and the Jackson County Commissioner's Court is immaterial. These provisions are designed to carry out the declared object of the Act. The fact that they are not specifically indicated in

the title does not make it or the Enabling Act invalid. See King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408, 411 (1956), wherein the title of the statute did not mention the fact that an election to adopt the provisions of the Act was required. The Court there held that the election was related and incidental to the object of the Act and was merely a procedural matter relating to its accomplishment. The duties imposed on the County Tax Assessor-Collector and the Commissioners Court are "subsidiary matters reasonably connected, germane, incident and relevant to the main expressed subject of the act." They are procedural matters calculated to carry the declared object into effect. 53 Tex.Jur.2d, Statutes, § 55, p. 100 (1954); City of San Antonio v. Lane, 32 Tex. 405 (1869); Breen v. Texas & Pac. R. R. Co., 44 Tex. 302 (1875); Johnson v. Martin, 75 Tex. 33, 12 S.W. 321 (1889); Doeppenschmidt v. International & G. N. R. Co., 100 Tex. 532, 101 S.W. 1080 (1907); Board of Insurance Com'rs. v. Sproles M. Freight Lines, 94 S.W.2d 769 (Tex.Civ.App.–Fort Worth, 1936, writ ref'd). In the last-cited case the Court held that failure of the title to mention provisions concerning the holdings of hearings and other matters were not violative of Art. III, Sec. 35 since these were only means properly authorizing the accomplishment of the purposes of the Act.

It is of assistance to examine the general approach that has been followed by the Legislature and the Attorney General of Texas with regard to the titles of Enabling Acts relating to the creation of hospital districts. An examination of dozens of statutes relating to the creation of hospital districts passed in 1967 (the year that the Edna Hospital District Enabling Act was passed) reflects that the title attacked by appellants is typical of the title of practically all of these statutes. For example, the title of the Enabling Act for the Collingsworth County Hospital District, Tex. Laws 1967, Ch. 262 at 578 provides "An Act relating to the creation, financing, administration, and operation of the Collings-worth County Hospital District; and declaring an emergency." The Legislature has adopted the same approach with respect to titles of many other hospital district enabling acts. Merkel Hospital District, Tex.Laws 1967, Ch. 90 at 170 "An Act authorizing creation of the Merkel Hospital District; providing for an election within the area of the proposed hospital district and making certain findings in connection therewith; providing for the operation and financing of said district, including the procedures it is to follow; providing a severability clause; and declaring an emergency."; Martin County Hospital District, Tex.Laws 1967, Ch. 674 at 1774 "An Act relating to the creation, administration, powers, duties, and financing of the Martin County Hospital District comprising all of Martin County, Texas; and declaring an emergency."; North Cherokee County Hospital District, Tex.Laws 1967, Ch. 215 at 471 "An Act relating to the creation, administration, powers, duties and financing of the North Cherokee County Hospital District; providing a severability clause; and declaring an emergency."; Rising Star Hospital District, Tex.Laws 1967, Ch. 432 at 996 "An Act relating to the creation, establishment, maintenance, and operation of the Rising Star Hospital District located in that part of Eastland County, Texas, within the boundaries of the Rising Star Independent School District, by authority of the State of Texas; and declaring an emergency." See also, Cochran Memorial Hospital District, Tex.Laws 1967, Ch. 494 at 1113; Earth-Springlake Hospital District, Tex. Laws 1967, Ch. 134 at 283; Garza Hospital District, Tex.Laws 1967, Ch. 502 at 1132; Lubbock County Hospital District, Tex.Laws 1967, Ch. 484 at 1095; Marion County Hospital District, Tex.Laws 1967, Ch. 184 at 394; Wood County Central Hospital District, Tex.Laws 1967, Ch. 293 at 705. These hospital district Enabling Acts are typical of those passed in 1967 and in which the title was comparable to that of the Edna Hospital District Act. Of the several dozen hospital districts

created in 1967 few, if any, of the Enabling Acts mention the effect on other municipalities or political subdivisions or the effect of the hospital district on other Texas statutes.

The Attorney General of Texas has approved the bonds of numerous hospital districts in Texas created under Art. IX, Sec. 9, Tex.Const. In so doing he passed upon the legality of the title to the Enabling Act creating the particular hospital district and we accord weight to such opinions. In the present case, the Attorney General gave preliminary approval of the bonds of the Edna Hospital District subject only to receipt by the Attorney General of a non-litigation certificate and final examination of the printed bonds, and we also accord weight to that opinion.

We hold that the Enabling Act does not violate the provisions of Art. III, Sec. 35, Texas Constitution, and that the title of it adequately expresses the subject of the statute.

By their fifth point of error appellants contend (1) that the failure of the Edna Hospital District to assume outstanding indebtedness precludes a valid creation of the district; and (2) that the provisions of the Enabling Act concerning outstanding indebtedness are unconstitutional. These contentions are without merit.

Section 9 of Article IX provides in pertinent part that:

"* * * providing that any district *so created* shall assume full responsibility for providing medical and hospital care for its needy inhabitants and assume the outstanding indebtedness incurred by cities, towns and counties for hospital purposes prior to the creation of the district, if same are located wholly within its boundaries, and a pro rata portion of such indebtedness based upon the then last approved tax assessment rolls of the included cities, towns and counties if less than all the territory thereof is included within the district boundaries; * * *." (Emphasis added)

The assumption of outstanding indebtedness is not a condition precedent to the creation of a hospital district. Section 9 of Article IX expressly provides that the assumption of outstanding indebtedness if any, is to occur *after* the district is created. The assumption of indebtedness provision quoted above begins with the statement "any district so created." In order for a district to be created under Art. IX, Sec. 9, (1) the Legislature must by law provide for the creation; and (2) the creation must be approved by a majority of the qualified property taxpaying electors of the district voting in an election called for passing on the creation of the district.

Appellants' contention that the assumption of outstanding indebtedness must occur prior to the creation of the district and as an "indispensable condition to creating the hospital district" is not correct. Even if there were some "outstanding indebtedness" which the Edna Hospital District is required to assume, that fact would be irrelevant in this case brought by appellants to have the creation of the Edna Hospital District declared invalid and to enjoin the district from levying taxes and issuing bonds and other obligations for hospital purposes.

Appellants also argue that the assumption of indebtedness provision of the Enabling Act is inconsistent with Art. IX, Sec. 9 and thus renders the entire Enabling Act unconstitutional. The portion of the Enabling Act of which appellants complain provides:

"* * * Since there is no hospital, hospital system or hospital facilities of any nature presently owned by Jackson County or any city or town within the boundaries of said district, no provisions are made herein for the transfer of properties or equipment or the assumption of outstanding indebtedness heretofore incurred for hospital purposes. * * *"

If it is assumed, however, that the legislative statement above quoted is incorrect in that it predicates its conclusion that there is no outstanding indebtedness on a misstatement of the law, *i. e.*, that outstanding indebtedness need be assumed only where there are physical facilities of a hospital operated by a municipality within the boundaries of a hospital district, that is no basis for concluding that the entire act is unconstitutional. In the light of the severability provision in the Enabling Act, this Court has a duty to sever out any provisions that are inconsistent with the Constitution and to retain the remainder of the Act in order to carry out the legislative intent. This provision is not so intermingled and interrelated with the other parts of the statute so as to make it impossible to separate them. There is actually no requirement that the Enabling Act creating the hospital district make any reference to the assumption of indebtedness. The Constitution specifically requires that such an assumption of indebtedness shall occur and any hospital district must make the assumption. Thus, if this Court were to determine that the Enabling Act's provisions relating to assumption of outstanding indebtedness were inconsistent with the Constitution it could eliminate that provision and leave the Act standing; or, the Court could follow the approach of the Supreme Court in Eades v. Drake, 160 Tex. 381, 332 S.W.2d 553 (1960) and Jordan v. Crudgington, 149 Tex. 237, 231 S.W.2d 641 (1950), and read in the constitutional provision, *i. e.*, that the district shall assume any outstanding indebtedness. In either event, any inconsistency found in the Enabling Act's provisions should not affect the remainder of the Act.

The contentions made by appellants under their group one points are overruled.

### Appellants' Group Two Contentions

We will next consider appellants' Group Two contentions relating to the action of the trial court in sustaining district's plea to the jurisdiction in connection with appellants' alleged election contest.

The parties agree that Art. 9.03, Election Code is here applicable. That statute reads as follows:

"Any person intending to contest the election of any one holding a certificate of election for any office mentioned in this law, shall, within thirty (30) days after the return day of election, give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest. By the 'return day' is meant the day on which the votes cast in said election are counted and the official result thereof declared. Acts 1951, 52nd Leg., p. 1097, ch. 492, art. 131."

Art. 9.30 Election Code makes Art. 9.03 applicable to contests of elections held for purposes other than the election of officers.

Appellants contend that the return day of the election held on November 11, 1967 was on March 11, 1968 and appellees say that it was on November 13, 1967. Appellants admittedly did not give notice of intention to contest the election within 30 days after November 13, 1967. Appellants necessarily rely on the position that if such notice was given it was by their original petition filed in this case on March 22, 1968.

■ The judgment of the trial court sustaining appellees' plea to the jurisdiction concerning the alleged election contest may be upheld on several independent grounds. First, we agree with District that the return day for the election was November 13, 1967. On that date the Commissioners Court of Jackson County, Texas convened in a regular session and at a regular term and "approved as canvassed" the elections of November 11, 1967, and also ordered that the returns of the elections be entered in the Election Return Records of the County Clerk's Office.

That action constituted compliance with the obligations of the Court. The returns of the election must be considered as a part of the canvassing order and it is clear that the returns reflected the result of the election. Appellants' argument that the order entered on November 13, 1967 was not as explicit as it could have been does not defeat the showing that the returns were canvassed and the results of the election declared on November 13, 1967, and that date became the return day of election.

Jurisdiction of the district courts in election contests is dependent upon compliance by contestants with the 30 day notice requirement of Art. 9.03, Election Code. See Maddox v. Commissioners Court of Palo Pinto County, 222 S.W.2d 475 (Tex.Civ. App., Eastland, 1949, n. w. h.) in which the Court held:

> " * * * It is the settled law that the jurisdiction of the District Court in election contests is dependent upon service of the notice and statement required by statute upon the contestees within the time and in the manner required by law. In the absence of notice, served in the statutory time and manner, it has been repeatedly held that the District Court acquired no jurisdiction of such contest. * * *"

Since appellants undisputedly failed to give notice of intention to contest the election within 30 days after November 13, 1967, the trial court correctly held that it did not have jurisdiction to consider the election contest grounds asserted by them.

Appellants rely in part upon the fact that the Commissioners Court of Jackson County on March 11, 1968 entered a nunc pro tunc order concerning the election of November 11, 1967, and say that March 11, 1968 was, therefore, the return day of election. This latter position was not taken until appellants filed their first amended original petition on May 14, 1968. The reason for the nunc pro tunc order of March 11, 1968 is shown by the testimony of Mr. John W. Fainter, Jr., given on the hearing of District's plea to the jurisdiction. Mr. Fainter testified in substance that he is an Assistant Attorney General of the State of Texas in charge of the Municipal Bond and Charitable Trust Division of the Attorney General's office; that he requested entry of the nunc pro tunc order so that his file would reflect an order in the usual form prepared by law firms practicing bond law. We have held that the actions of the Commissioners Court on November 13, 1967 were legally sufficient to establish that the returns were canvassed and the election results declared. The nunc pro tunc order did not change November 13, 1967 as the proper return day of election.

■ The next ground upon which the trial court action dismissing the alleged election contest may be upheld is that even assuming that March 11, 1968 was the return day of election, it is clear that appellants did not timely serve a written notice of intention to contest the election of November 11, 1967 within the 30 day period required by Art. 9.03, Election Code. The notice required by that statute is two-fold; (1) notice in writing of the intention to contest; and (2) notice in writing of the grounds relied upon to sustain the contest. Each type of notice is mandatory. See Walker v. Thetford, 418 S.W.2d 276 (Tex.Civ.App., Austin, 1967, wr. ref. n. r. e.); Barker v. Wilson, 205 S.W. 543 (Tex.Civ.App., Austin, 1918, n. w. h.), decided under predecessor statute to Art. 9.-03, Election Code.

■ Appellants argue that their original petition, filed on March 22, 1968, was sufficient to give notice of intention to contest the election and it was served within 30 days of a nunc pro tunc order entered by the Commissioners Court on May 11, 1968, which they say was the correct return day of the election. That position is not well taken. An examination of appellants' original petition reflects that it did not therein give notice of an intention to contest the election. The record reflects

that appellants apparently realized the existence of a question concerning the giving of notice of intention to contest in that on May 14, 1968 they filed their first amended original petition in which for the first time, in Par. III thereof, they asserted "Notice of Election Contest". Here, appellants relied upon March 11, 1968 as the return day of election and that they had served copies of their original petition on appellees. It thus appears that appellants' original petition was not sufficient to give notice of intention to contest, and the allegations of "notice of Election Contest" in the first amended original petition were too late in any event to comply with Art. 9.03, Election Code.

There are additional reasons for upholding the trial court action in dismissing the alleged election contest. Appellants' original petition asserted that the March 11, 1968 order was invalid and without force and effect. Appellees were not given reason to believe that appellants considered March 11 the return day of election or that appellants considered the November 13, 1967 order insufficient. On the face of appellants' original petition, filed on March 22, 1968, the time for an election contest had passed. When representatives of the Edna Hospital District received the appellants' original petition they could only conclude that it asserted grounds which *should have* been asserted, if at all, in a *timely* election contest.

Appellants' original petition expressly stated that it was for a "declaratory judgment and injunctive relief." Consideration of the nature of statutory election contests makes manifest that the filing of appellants' original petition did not constitute the filing of that type of proceeding. As stated by the Supreme Court of Texas:

"* * * The rule is well settled in this State that the contest of an election, lacking the elements of a civil suit, is a political rather than a judicial question, and the courts under their general powers, legal and equitable, have no jurisdic-

tion of such a controversy. * * *" Carter v. Tomlinson, 149 Tex. 7, 227 S. W.2d 795, 799 (1950).

The Court had much earlier held as follows:

"* * * A contested election is not a civil suit or cause, and therefore cannot be tried by the proceedings had in such cases. Williamson v. Lane, 52 Tex. 335. Under the constitution as it was prior to the amendment of 1891, (to Art. 5, Section 8 of the Constitution, conferring jurisdiction upon the district courts over such contests) the district court had no jurisdiction to try contested elections, and the legislature could not confer that jurisdiction. * * *" Odell v. Wharton, 87 Tex. 173, 27 S.W. 123 (1894)

After the 1891 amendment to the Constitution permitting election contests the Texas Legislature enacted new legislation to confer jurisdiction upon the district courts to try election contests. This was done in 1895 and the jurisdictional provisions are, with minor changes, the same as those incorporated in Article 9.01 through 9.38 of the Texas Election Code. The procedure provided by Chapter 9 of the Code is designed to be final, e. g., Wright v. Fawcett, 42 Tex. 203 (1875); McCall v. Lewis, 263 S.W. 325 (Tex.Civ. App., Austin 1924, n. w. h.); exclusive, e. g., Rogers v. Johns, 42 Tex. 339 (1875); Thurston v. Thomas, 7 S.W.2d 105 (Tex. Civ.App., Beaumont 1928, n. w. h.); and the courts are limited thereto. Carter v. Tomlinson, supra. Since an election contest is "neither a suit in law nor in equity" it presents "a political question to be tried before a special tribunal with limited powers." McCormick v. Jester, 53 Tex.Civ. App. 306, 115 S.W. 278 (Dallas 1908, wr. dism.). Because of the special nature of an election contest a suit is required to be instituted as such, and grounds that constitute election contest grounds may not be raised in the usual manner as other issues in ordinary civil cases. See Williams v. Sorrell, 71 S.W.2d 944, 946 (Tex.Civ.App.,

San Antonio, 1934, n. w. h.), in which the Court held that the district court correctly struck a cross action in the nature of an election contest because "this was not the proper method of instituting an election contest."

 Plaintiffs' original petition for "declaratory judgment and injunctive relief" was addressed to the district court under its general powers, legal and equitable, under which the courts do not have jurisdiction of an election contest. Carter v. Tomlinson, supra; Williamson v. Lane, supra; Odell v. Wharton, supra. In the last-cited case the Court said:

"* * * A contested election is not a civil suit or cause and therefore cannot be tried by the proceedings had in such cases. * * *"

Since appellants' original petition did not constitute the filing of an election contest, and since there was no statement in writing included within that petition notifying the Edna Hospital District that appellants intended to contest the election in the future, appellants did not comply with Article 9.03, Election Code. The court below properly sustained District's plea to the jurisdiction.

*The case between appellants and Jackson County.*

*Appellants' Group Three Points.*

 We now pass to appellants' Group Three contentions that the judgment unlawfully subjects appellants' land to double taxation for hospitals by the county and the district; and that the Enabling Act conflicts with a constitutional prohibition in such respect.

The position of Jackson County, as is shown by its Counterpoint No. 1, is that the trial court properly withdrew this case from the jury and rendered judgment for it because under the undisputed facts Jackson County has the right to tax on a county-wide basis for the purpose of maintaining and supporting the county hospital located outside the boundaries of the Edna Hospital District. The basic factual background will here be partly reiterated.

In April 1967 the Legislature passed House Bill 610 as the Enabling Act for the Edna Hospital District. The boundaries of the Hospital District provided for in that act are coterminous with the Edna Independent School District and include 383 square miles within Jackson County. The Enabling Act provided that a confirmation election called by the Commissioners Court of Jackson County was necessary to complete the creation of the Hospital District. The organizers of the Hospital District and their attorney met with the Jackson County Commissioners Court on several occasions in the fall of 1967 and requested that it call a confirmation election. Jackson County had owned and operated a County Hospital outside of the boundaries of the Hospital District since 1946, and the County Judge and Commissioners were therefore concerned as to how the new Hospital District would affect the County Hospital, particularly with reference to the County's right to tax on a county-wide basis to maintain and support the County Hospital. The testimony reflects that at these meetings, and later when the notice of the election was running in the local paper, the organizers and their attorney assured the County Judge and County Commissioners that Jackson County's power to tax to maintain and support the County Hospital would be unaffected by the Hospital District, that the people of the new Hospital District would be voting a tax on themselves for another hospital, and that existing county facilities would not be affected. The organizers and their attorney also pointed out to the County Judge and the Commissioners that the Enabling Act itself did not prohibit Jackson County from taxing on a county-wide basis for hospital and medical care *furnished outside the district* but only prohibited other political subdivisions in Jackson County from taxing within the boundaries of the district *for the purpose of providing medical care*

*within the district.* The Jackson County Commissioners Court called the election and on November 11, 1967, the voters of the Hospital District confirmed the creation of the District and voted a bond issue for a hospital. Thereafter, this suit was filed questioning the validity of the District and the powers of the County to tax for hospital purposes. The County continues to maintain and support the County Hospital with tax revenues from the general fund for the benefit of all of the residents of Jackson County and to budget money for such purposes to take care of the health needs of all residents of the County.

During the trial of the case as between appellants and county the testimony involved the subjects of (1) the establishment of the County Hospital, (2) the County's obligation to furnish hospital and medical care to all residents of the County who are unable to pay, (3) the support of the County Hospital by the County, (4) the constitutional limitation on the County purpose tax, (5) the actual hospital and medical facilities maintained by the County, (6) the assurances referred to above and (7) whether the tax limitation provisions of House Bill 610 did or did not include Jackson County in its prohibition.

After the evidence was closed, the trial court found there were no issues of fact for the jury, withdrew the case from it and entered judgment which, among other things: (1) upheld the power of Jackson County to tax to maintain and support the County Hospital located outside the new Hospital District and (2) held that the Hospital District had the power to tax for hospital purposes within the boundaries of such District.

The facts concerning establishment of the County Hospital may be partly summarized as follows. In the latter part of 1945 the Commissioners Court of Jackson County called a county-wide election for January 26, 1946, for the purpose of voting on the creation of a County Hospital under the authority of Article 4478, V.A.C.S.,

which is the general statutory authority for the creation of a county-wide hospital. The result was 730 votes "for" and 132 "against". Thus, the Jackson County Hospital was created under Article 4478, with a bond issue floated and a hospital facility built at Ganado, Texas. The County Hospital was expanded and improved by later bond issues of Jackson County, but all bonds had been paid by the time of the trial. Article 4478 gives a county authority to establish a County Hospital and issue bonds to construct the facility and the power to tax and maintain funds for its operation and maintenance. Section 3 of Article 4478 provides:

"3. To cause to be assessed, levied and collected, such taxes upon the real and personal property owned in the county as it shall deem necessary to provide the funds for the maintenance thereof, and for all other necessary expenditures therefor."

Once a County Hospital is established the County must tax to operate and maintain it, and to pay for the hospital care furnished to any resident of the County who is unable to pay for such care. Article 4487, V.A.C.S., provides that the cost of hospital care and treatment in a County Hospital for the needy shall be a charge upon the County. Also, once a County Hospital is established under Article 4478 the County cannot legally cease to operate it. Attorney General's opinion C–463 (1965), with which we agree, in part states:

"Article 4478 by mandatory language requires the Commissioners Court to maintain an established County Hospital through designated powers granted within Article 4478. No provision may be found in the statutes or Constitution which allows a Commissioners Court to discontinue maintenance of a hospital established pursuant to a special election within Article 4478, with the exception of lease or sale of said hospital. Neither may the Board of Managers cease such operation as Article 4480 grants said

Board power to make rules and regulations for carrying out the purposes of the hospital with no specific power to cease operations."

The testimony in this case shows that Jackson County has operated its County Hospital from the time it was completed until the present and contributes an average amount of about $20,000.00 a year to make up the difference between the cost of maintaining and operating the hospital and the operational income of the hospital. The County Hospital pays its operating income into the County general fund and the County pays the hospital's operating and maintenance cost out of the general fund, the difference being made up with tax money. In maintaining and operating the County Hospital, planning its facilities and making contributions to it, Jackson County has always considered the public health needs of the entire County. The County now has a modern, fully equipped hospital and nursing home which apparently is capable of caring for the hospital needs of the County for some years in the future. The County Hospital has planned for a growing population and is operating now at only a 47% to 52% occupancy. If this percentage of occupancy decreases the contribution by the County will probably have to increase because of the loss of operational income. The contributions to Jackson County's hospital from the general fund is but one part of the general levy for county purposes (the others being permanent improvement fund, road and bridge fund and jury fund). See Art. VIII, Sec. 9, Texas Constitution which sets the maximum tax rate for the general levy at $.80 per $100.00 valuation. Jackson County is taxing now at that maximum.

It thus appears that when Jackson County established a County Hospital under Article 4478 several results followed: (1) it had to tax to operate and maintain the hospital, (2) it had to furnish hospital and medical services to the needy, (3) it cannot cease to operate the hospital and (4) its tax rate for the general fund (used in part to operate and maintain the hospital) is limited by the Constitution. These factors are not material if the county hospital is located within the boundaries of a newly formed hospital district because under such circumstances the county hospital has to be transferred to the hospital district under Art. IX, Sec. 9 of the Constitution along with the duties of taxing to support it, of furnishing hospital care to the needy and of operating and maintaining the hospital itself. But when the county hospital is located outside the boundaries of a newly formed hospital district the factors mentioned become crucial. Appellee County contends that the Legislature in passing the Enabling Act here involved wisely did not exclude Jackson County as a political entity with the power to tax to support its County Hospital located *outside the Hospital District*, and thus spelled out what the Constitution meant in the tax exclusions of Art. IX, Sec. 9. Jackson County concedes that it cannot levy taxes for hospital purposes or for providing medical care *within the boundaries of the District* since Art. IX, Sec. 9 clearly prohibits that action. Jackson County says that it can levy taxes on a county-wide basis for hospital purposes and providing medical care *outside the boundaries of the District*, for a duly established county hospital; and that Art. IX, Sec. 9 does not prohibit such action. Jackson County does not want to levy taxes for hospital purposes or for providing medical care *within the boundaries of the Hospital District*, but only to levy taxes on a county-wide basis to maintain and support its County Hospital located outside the boundaries of the Hospital District.

Appellee County says that Art. IX, Sec. 9 properly construed means that the people of the Hospital District are left free to determine these matters for themselves, and they are in a position to know the facts and to make an intelligent choice based on them; that this encourages agreement on these matters on the local level, and also permits the consideration of the public health needs of the entire County before creation of a hospital district covering only

a portion of a county in which there is a duly established County Hospital located outside the district.

We agree with appellee County that in this case the most reasonable and practical interpretation to apply. to Art. IX, Sec. 9 of the Constitution is that when a County has established a County Hospital under general statutory law and a new Hospital District is created for a portion of the County *not including the County Hospital,* Art. IX, Sec. 9 does not prohibit a county from taxing on a county-wide basis to maintain and support its County Hospital. House Bill 610 makes this clear as it applies to Jackson County and recognizes that there were no hospital facilities owned by Jackson County *in the District* so that no transfer of property or assumption of indebtedness was necessary.

In House Bill 490, Chapter 422, 60th Legislature, Regular Session, the Legislature created Texhoma Memorial Hospital District. In Section 1(b) of that Enabling Act the Legislature recited that Sherman County did not have a hospital so therefore no transfer of properties or assumption of indebtedness was necessary. Then in Section 12 of that act the Legislature spells out that Sherman County (by name) as well as other political subdivisions in the District *"shall not levy any tax against any property within the hospital district for hospital purposes."*

■ This flexibility in the Legislature to meet the differing local situations is desirable, even though the vast majority of hospital districts created by the Legislature include entire counties. See Article 4494q, V.A.C.S. From these two House Bills (610 and 490) it can be seen that the Legislature has used this flexibility in dealing with the two different counties, one with a county hospital, one without. And also from these two examples we can conclude that the Legislature has construed Art. IX, Sec. 9 as follows: (1) If a county has a County Hospital it can tax on a county-wide basis to support it. (House Bill 610)

(2) If the county does not have a County Hospital it cannot tax in the Hospital District for hospital purposes. (House Bill 490)

It also appears that when the Legislature wants to exclude a county from taxing within a hospital district it so provides in the Enabling Act for the hospital district. See Article 4494q—22 Tex.Civ.Stat. (59th Legislature) where Section 13 of the Enabling Act for Wilbarger County Hospital District provides that Wilbarger County (by name) shall not tax within the hospital district for hospital purposes.

■ In determining the meaning of a Constitutional provision, Courts will consider and give weight to the construction given it by the Legislature. Kaufman County Levee Imp. District No. 10 v. National Life Insurance Company, 171 S.W. 2d 188 (Tex.Civ.App., Dallas, 1943, wr. ref.). In Walker v. Baker, 145 Tex. 121, 196 S.W.2d 324 (1946) the Supreme Court held that contemporaneous construction of a Constitutional provision by the Legislature is a safe guide as to its proper interpretation. Contemporaneous in this sense is by a Legislature held while the particular Constitution containing the provision to be interpreted is in effect. House Bill 610 and 490 are contemporaneous with our present Constitution in which we find Art. IX, Sec. 9. An earlier Supreme Court case has held "Legislative construction and contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation. * * *" American Indemnity Company v. City of Austin, 112 Tex. 239, 246 S.W. 1019 (1922).

The foregoing considerations demonstrate the practical need for the interpretation of the tax prohibition clause of Art. IX, Sec. 9 as contended for by Jackson County. The two House Bills referred to show the desirability of flexibility in the Legislature with respect to such prohibitions so that they can be applied for the benefit of the people in a particular local

area based on the facts that exist therein. The legislative interpretation of the prohibition clause here involved is a "safe guide" and of "substantial value" and we adopt and follow it.

■ The tax prohibition clause of Art. IX, Sec. 9 should not be given a narrow or technical construction but should be liberally construed to accomplish an equitable and practical result. See Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 (1939); Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147 (1942), holding that constitutional provisions will not be interpreted so as to lead to great public inconvenience; and Texas & New Orleans R. Co. v. Railroad Commission, 220 S.W.2d 273 (Tex.Civ.App., Austin, 1949, wr. ref.).

■ The tax clause of Art. IX, Sec. 9 is susceptible of several different possible interpretations. One interpretation is that no other political entity shall tax property within the District for hospital purposes or medical care *furnished within the district*. This prevents other political subdivisions from providing medical care in the district. Another interpretation is that the prohibition (that no other entity shall tax property within the district) does not apply to a county furnishing hospital and medical care *outside the boundaries of the district* to all residents of the county at the time the district is created; and that such county may continue to tax for the purpose of furnishing such hospital and medical care outside the boundaries of the district. These results are reached in either interpretation without rearranging the words themselves in the particular clause under consideration. Under appellants' interpretation the words "within the boundaries of the district" would have to be moved up and placed after the words "levy taxes" so that the clause would read " * * * no other municipality or political subdivision shall have the power to levy taxes 'within the boundaries of the District' for hospital purposes or for providing medical care."

This would amount to re-writing the clause. But the courts cannot rewrite the Constitution, only the people can. Carpenter v. Sheppard, 135 Tex. 413, 145 S.W.2d 562 (1940).

The interpretation of Article IX, Sec. 9 urged by appellants gives rise to several complex questions such as: (1) What does the County do with its County Hospital? (2) What does the County do about its statutory obligations with respect to the County Hospital? (3) How does the County support the County Hospital with a tax rate limit imposed by the Constitution? (4) Can the County tax on less than a county-wide basis? and (5) If so, can it have one value for part of the County and another value for another part? These questions would necessarily have to be answered if Jackson County cannot tax on a county-wide basis to support its County Hospital. If Jackson County cannot tax for such purpose within the Hospital District then the County will have to support its hospital by ad valorem tax outside the district, and since it is already at the maximum tax rate the only apparent alternatives would be to raise valuations or the percentage of market value it taxes on as such applies to property outside the Hospital District. These questions would not arise under appellee County's suggested interpretation, and thus *the latter is the more reasonable of the two* and should be adopted. See Thomas v. Creager, 107 S.W.2d 705 (Tex.Civ.App.—Eastland, 1937, wr. dism). Moreover, it does not appear that the people adopting Art. IX, Sec. 9 intended the consequences that must follow if appellant's interpretation is given to the tax prohibition clause of that article. It is proper for a court to inquire into those consequences. Koy v. Schneider, 110 Tex. 369, 218 S.W. 479 (1920).

■ It also appears that Art. IX, Sec. 9 was not intended to destroy county hospitals duly established under general statutory law, but instead sought to provide a method whereby the Legislature could establish hospital districts in accordance with

the local situation. Prior to Art. IX, Sec. 9, hospital districts had to be created by constitutional amendment. The purpose sought to be accomplished by a constitutional provision can be used by a court as an aid in interpretation. Harris v. City of Fort Worth, 142 Tex. 600, 180 S.W.2d 131 (1944).

We overrule appellants' Group Three contentions to the effect that the judgment unlawfully subjects appellants' land to double taxation for hospitals by the County and District, and that the Enabling Act conflicts with a constitutional prohibition of double taxation.

The judgment of the trial court is affirmed.