

# THE ATTORNEY GENERAL
## OF TEXAS

April 10, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Barry L. Macha
Criminal District Attorney
Wichita County Courthouse
Wichita Falls, Texas 76301

Opinion No. JM-674

Re: Whether the board of managers of an emergency communication district created under article 1432e, V.T.C.S., may be granted advance funds by the county for the purpose of educating the public about the district prior to the holding of a confirmation election

Dear Mr. Macha:

You ask whether the commissioners court may authorize a loan to the board of managers of an emergency communication district created under article 1432e, V.T.C.S., for the purpose of educating the public about the district prior to the holding of a confirmation election. Because we believe the board of managers of an emergency communication district may neither apply for nor accept funds on behalf of the district prior to the confirmation election, we answer your question in the negative. We need not consider whether the commissioners court may lend county funds to the district. See Tex. Const. art. III, §52; Attorney General Opinion H-416 (1974).

Article 1432e, V.T.C.S., was enacted in 1985 for the purposes of establishing the number 9-1-1 as the primary emergency telephone number for certain local governmental units and encouraging such units of government to develop and improve emergency communication procedures and facilities. V.T.C.S. art. 1432e, §2. The act authorizes the creation of an emergency communication district to carry out the purposes and provisions of the act. Id. §§5, 12(a).

A special district has only that authority which is clearly granted by the legislature. Attorney General Opinion JM-257 (1984) (citing Tri-City Fresh Water Supply District No. 2 of Harris County v. Mann, 142 S.W.2d 945, 948 (Tex. 1940); Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199, 207 (Tex. Civ. App. - San Antonio 1954, writ ref'd n.r.e.); Moore v. Edna Hospital District, 449 S.W.2d 508 (Tex. Civ. App. - Corpus Christi 1969, writ ref'd n.r.e.)). Section 12 of article 1432e describes the general powers of an emergency communication district:

(a) The district, when created, constitutes a body corporate and politic, exercising public and essential governmental functions and, having all the powers necessary or convenient to carry out the purposes and provisions of this Act, including the capacity to sue or be sued. The district shall function as provided by this Act, and the board may levy and collect the proposed 9-1-1 emergency service fee. The board shall adopt an order specifying the date of the commencement of the levy and collection of the 9-1-1 emergency service fee.

(b) In order to fund the district, the district may apply for, accept, and receive federal, state, county, or municipal funds as well as private funds and may spend those funds for the purposes of this Act. The board shall determine the method and sources of funding for the district.

An emergency communication district is managed, administered, and controlled by a board of managers who serve without compensation. Id. §6(d), (e). The board is composed of members appointed by each county and city in the district in a number determined by whether the district contains a city with a population of more than 140,000 according to the most recent federal census. Id. §§3(6); 6(a), (b). In districts without a city of that size, volunteer fire departments served by the district may appoint a member to the board. Id. §6(b)(3). The principal service supplier to the district may appoint one nonvoting member to the board. Id. §6(a)(5), (b)(4). The board may contract with any public or private entity to carry out the purposes of the act. Id. §6(e). The board may also appoint and establish the compensation of a director of communication to serve as general manager of the district. Id. §7(a). The board also sets the 9-1-1 emergency service fee and may issue bonds in the name of the district and provide for their repayment. Id. §§14(c); 17; 18.

In the brief prepared by your office it is argued that the commissioners court may not approve a loan to the board of managers of the district prior to the holding of the confirmation election because the district may not exercise any of its powers before its creation is confirmed by the election. We agree. In Attorney General Opinion WW-1 (1957) it was said that the confirmation election gives life to a special district and that a district could not, on the strength of the confirmation election alone, exercise any powers requiring a separate vote. Attorney General Opinion MW-380 (1981) noted that a special district is not "created" until it is approved by the voters at the confirmation election held in accordance with law and that its directors are not authorized to exercise any powers unless the district is in fact approved pursuant to the election.

When the legislature intends for the directors of a special district to have authority to exercise certain powers before the confirmation election, it expressly provides such authority. For example, section 54.022 of the Water Code authorizes the appointment of temporary directors of a municipal utility district whose duties include the calling of the confirmation election and the canvassing of returns from the election. See Water Code §§54.026-54.029. Article 1432e likewise authorizes the board of managers of an emergency communication district to conduct the confirmation election. See V.T.C.S. art. 1432e, §11(a), (d)-(f). The act requires the county clerk to canvass the returns of the election, rather than the board of managers. Id. §11(g). The confirmation election may also seek voter authorization for the district to charge and collect a 9-1-1 emergency service fee. Id. §11(d). The act does not expressly authorize the board to exercise any other of the district's powers before the district is approved by the voters.

It is apparent from a reading of the act that the legislature conditioned the exercise of the district's powers and governmental functions upon the approval of the voters at the confirmation election:

> The district, when created, constitutes a body corporate and politic, exercising public and essential governmental functions and, having all the powers necessary or convenient to carry out the purposes and provisions of this Act, including the capacity to sue or be sued. (Emphasis added).

Id. §12(a). We believe the board's power under section 12(b) to apply for and accept funds for the purposes of article 1432e is necessarily conditioned upon the creation of the district pursuant to the confirmation election. Accordingly, you are advised that the board of managers may not borrow funds from the commissioners court prior to the confirmation election for the purpose of educating the public about the district.

Our answer, however, does not mean that the commissioners court may not expend county funds for the purpose of educating the public prior to the election. A commissioners court has only those powers expressly conferred by or necessarily implied from the constitution and laws of this state. See Tex. Const. art. V, §18(b); Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948). Under article 1432e, the county is required to share the cost of the confirmation election on a per capita basis based on the county population of all unincorporated areas within the district. V.T.C.S. art. 1432e, §11(i). If the commissioners court finds that educating the public about the emergency communication district is a proper expense of conducting the confirmation election, we believe that it may share in such costs on a

per capita basis with the incorporated cities in the district. <u>Id.</u> <u>See generally</u>, Attorney General Opinion JM-157 (1984) (commissioners court may contract with nonprofit organization for the purpose of promoting and encouraging voter registration).

### S U M M A R Y

The board of managers of an emergency communication district appointed pursuant to article 1432e, V.T.C.S., may not borrow funds from the commissioners court of a county within the district prior to the confirmation election for the purpose of educating the public about the district.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General